**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

HOWARD HOFFMAN, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:08-CV-3507-JOF
PARADE PUBLICATIONS, et al., :
:
    Defendants. :

## OPINION AND ORDER

This matter is before the court on Defendants' motion to dismiss and motion to stay [9] and Plaintiff's motion for oral argument [11].

**I.**    **Background**

    **A.**    **Procedural History and Facts**

Plaintiff, Howard Hoffman, filed suit against Defendants, Parade Publications, Condé Nast Publications and Advance Publications, Inc., on November 13, 2008, alleging Defendants violated his rights under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and raising a state law claim of intentional infliction of emotional distress.[1]

---

[1]Defendants contend that only Parade and Advance Magazine Publishers, Inc., are proper defendants in this case, not Condé Nast or Advance.

Plaintiff worked for Defendants from 1992 until January 1, 2008, in Parade's Atlanta offices. *See* Cmplt., ¶ 5. On October 2, 2007, when Plaintiff was 62 years old, he was informed by the Parade's Publisher and President that he would be terminated effective January 1, 2008. *Id.* Plaintiff's duties were shifted to a younger employee. *Id.* Parade's offices in Atlanta consisted of Plaintiff and an administrative assistant. *Id.*, ¶ 10. At the time of his termination, Plaintiff was Senior Vice President/Director of Newspaper Relations at Parade and had a "distinguished record of performance and promotions for almost 16 years." *Id.*, ¶¶ 11, 18.

Despite his many successes, described in his complaint, on October 2, 2007, Randy Siegel, President and Publisher of Parade, called Plaintiff to tell him the company's Atlanta office would close at year's end. *Id.*, ¶ 31. Siegel told Plaintiff he would be taking a "forced early retirement" and that Plaintiff should inform his assistant that the Atlanta office would be closing. *Id.* Plaintiff alleges that Defendant's Human Resources adviser instructed him to inform his assistant that the Atlanta office would be closing not because of Siegel's decision, but rather based on Plaintiff's decision to take early retirement. *Id.*, ¶ 32. Plaintiff took this as an instruction to "lie" to his assistant. *Id.*

On October 12, 2007, Plaintiff met with Siegel at Parade's offices in New York City. *Id.*, ¶ 33. Plaintiff stated he did not want to take early retirement and that it would cause him financial hardship to do so. *Id.* Siegel reiterated that the Atlanta office would close on

2

January 1, 2008. *Id.* Plaintiff then suggested an alternative – that the Atlanta office physically close, but that Plaintiff work out of his home without an administrative assistant. *Id.*, ¶ 36. On October 16, 2007, Siegel informed Plaintiff that his plan had been rejected and his employment would end on January 1, 2008. *Id.*, ¶ 37. After Plaintiff's termination, his sales territory was given to a substantially younger employee. *Id.*, ¶ 39.

On November 28, 2007, Plaintiff filed a civil complaint against Parade Publications, Condé Nast, and Advance Publications, Inc., in the Supreme Court of the State of New York. In that complaint, Plaintiff alleged that Defendant discriminated against him on the basis of his age in violation of New York Executive Law, §§ 290 *et seq.*, and New York City Administrative Code §§ 8-101 *et seq*. *See* New York Cmplt., ¶ 1. The jurisdiction and venue allegations in the New York Complaint relate only to New York law. *Id.*, ¶¶ 2-3. Plaintiff's first cause of action is for "age discrimination under New York Executive Law." *Id.*, ¶¶ 50-55. Plaintiff's second cause of action is for "age discrimination under New York City Administrative Code." *Id.*, ¶¶ 56-62. Plaintiff's New York complaint raises no claims under federal law.

On July 2, 2008, the New York Supreme Court determined that it did not have jurisdiction over Plaintiff's complaint because he had worked in Georgia. Plaintiff has appealed that order and the appeal is currently pending. In addition, after receiving that determination, Plaintiff filed a charge of discrimination on the basis of age with the EEOC

3

office in Atlanta, Georgia, on July 23, 2008. Plaintiff then requested and received a Right to Sue letter on August 26, 2008. Following receipt of that letter, Plaintiff filed the instant complaint ("the Georgia Action").

In the Georgia action, Plaintiff alleges that Defendants violated his rights under the ADEA by terminating him on the basis of his age. Plaintiff also raises a Georgia state law claim of intentional infliction of emotional distress. Plaintiff seeks $2,214,133 in lost pay that he would have received until the age of 70, plus liquidated back pay damages. Plaintiff seeks compensatory and punitive damages based on his state law claims.

### B. Contentions

In their motion to dismiss, Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to his ADEA claim and that the allegations in his complaint fail to state a claim for intentional infliction of emotional distress. In the alternative, Defendants request that the court stay this action pending a decision from the New York State Supreme Court, Appellate Division, on Plaintiff's state court complaint raising the same issues.

Plaintiff argues that the Equal Employment Opportunity Commission's filing deadlines should be tolled in his situation because he had a good faith belief that a New York state court would have jurisdiction over the circumstances of his termination. Plaintiff also responds that he states a claim for intentional infliction of emotional distress because

4

he alleges that Defendants intentionally and recklessly terminated his employment on the basis of his age, forced him to take early retirement, lied to him about the reasons for his termination, and demanded that he lie to his subordinate about the reasons for termination. Plaintiff does not oppose a stay of this litigation for a limited period of time due to the pending appeal in New York, but Plaintiff prefers to litigate his claims in Georgia.

## II. Discussion

### A. Equitable Tolling

As Georgia is a non-referral state, under the ADEA a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful discriminatory employment practice. 29 U.S.C. § 626(d)(1). The law in this circuit states that the 180-day period begins to run when the plaintiff knows or should have known of the unlawful employment action. *See Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559 (11th Cir. 1987).

The Supreme Court, however, has held that the 180-day limitations period is not a jurisdictional prerequisite to suit in federal court but is instead a requirement subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) (citing *Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383, 1387 (11th Cir.1982)); *Cocke v.*

5

*Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987); *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985).

Under the doctrine of equitable modification to statutes of limitation, "the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975) (Title VII case); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994); *See Cocke*, 817 F.2d at 1561 (applying *Reeb* to ADEA cases). In other words, in order for equitable tolling to apply, "the facts must show that, in the period more than 180 days prior to the filing of [his] complaint[] with the EEOC, [the plaintiff] had no reason to believe that [he was] the victim of unlawful discrimination." *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993).

The Eleventh Circuit has also held that the time limits to file with the EEOC in employment discrimination actions may also be equitably tolled "(1) when a state court action is pending; (2) when the defendant has concealed an act supporting the Title VII cause of action; and (3) when the defendant has mislead the employee regarding the nature of his rights under Title VII." *Washington v. Ball*, 890 F.2d 413, 414-25 (11th Cir. 1989). The plaintiff bears the burden of proof of demonstrating the right to equitable tolling because it is "an extraordinary remedy which should be extended only sparingly." *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004). "Equitable tolling is

6

appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvick v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

There appears to be no dispute between the parties that at the very latest, Plaintiff knew on October 2, 2007, that Parade intended to terminate him effective January 1, 2008. Plaintiff had made a pitch for a different financial arrangement, and the company rejected it on October 16, 2007. Thus, Plaintiff's EEOC filing on July 23, 2008, 281 days after October 16, 2007, is not timely under the 180-day limitation period set forth in 29 U.S.C. § 626(d). (Even if the court were to count from Plaintiff's actual discharge date of January 1, 2008, his July 23, 2008 filing would still be untimely.) Plaintiff does not appear to dispute these calculations because he asks that the court equitably toll the limitations period.

Plaintiff argues that the court should equitably toll the limitation period because he had a reasonable good faith belief that he would be able to pursue his claims in New York as the decision to terminate him was made in New York by New York-based companies. (As it later developed, the trial court in New York determined there was no jurisdiction for Plaintiff's claim and that ruling is on appeal.) Plaintiff relies on the reasoning in *Husch v. Szabo Food Service Co.*, 851 F.3d 999 (7th Cir. 1988), to support his theory. There, one month after allegedly receiving a termination letter from her supervisor, the plaintiff filed

7

an age discrimination complaint with the Illinois Department of Human Rights and the EEOC in Illinois. The Illinois Department dismissed the plaintiff's complaint for lack of jurisdiction, stating that she had not actually worked for pay in Illinois during the days prior to her termination, despite the fact that she worked for an Illinois-based company. The plaintiff then filed an ADEA action in federal district court. The district court dismissed the plaintiff's suit, finding that the termination letter originated from an office in Connecticut and, therefore, the plaintiff needed to file her complaint with the state agency in Connecticut. (Both Connecticut and Illinois are referral states and a plaintiff must first pursue available state administrative remedies before bringing an action in federal court.)

The Seventh Circuit determined that although it was clear that the plaintiff had filed her administrative complaints in the wrong state, she had attempted to exhaust her remedies by filing the complaint "with the proper state agency in at least one of the states in which a reasonable person could believe that the discrimination occurred." *Id.* at 1003. The court concluded that the plaintiff was entitled to equitable tolling because she "reasonably tried to assert her rights in a timely fashion, she simply failed to assert them in what was later determined to have been the only proper forum." *Id.* at 1003-04. "We should not require an ADEA plaintiff in a close case to determine, at peril of having his or her lawsuit dismissed, precisely where the alleged discriminatory act occurred." *Id.* at 1004. Therefore,

AO 72A
(Rev.8/82)

the court determined that the plaintiff was entitled to equitable tolling on the filing of her complaint with the Connecticut state agency.

At first blush, it would appear that *Husch* is persuasive precedent for Plaintiff's argument here. However, as Defendants point out, the plaintiff in *Husch* had filed an administrative grievance for both Illinois state claims as well as for a claim under the Age Discrimination in Employment Act, whereas here, significantly, Plaintiff's filings in New York did not raise the issue of a claim under the ADEA. For example, in *Wakefield v. Cordis Corp.*, 211 Fed. App'x 834 (11th Cir. 2006), the plaintiff filed a charge of race discrimination with the Florida Commission on Human Relations. The plaintiff did not file a charge with the EEOC. The Florida Commission eventually determined it did not have jurisdiction over the matter because the plaintiff had signed a separation agreement that released all of his claims against his employer. The plaintiff went through a series of appeals before filing a Title VII race discrimination complaint in federal district court. The district court dismissed the plaintiff's complaint, in part, based on the fact that he had never received a Right to Sue letter from the EEOC. On the plaintiff's motion for reconsideration, the district court also determined that the plaintiff was not entitled to equitably toll the limitations period for filing an EEOC charge. The Court of Appeals determined that because the plaintiff's charges with the Florida Commission had not been filed within 300 days of his leaving the company, he could not have filed a timely charge with the EEOC. *Id.* ("That

9

[the plaintiff] sought review of the Notice of Determination in Florida state court instead of filing a complaint under Title VII in federal court does not give him grounds for equitable tolling.").

Here, it is not simply a matter of Plaintiff mistakenly believing that his claims would be governed by New York courts and New York law. Rather, Plaintiff never put forth an ADEA claim at all until the New York trial court ruled it did not have jurisdiction over his complaint raising only New York state law claims. Therefore, Plaintiff's assertion that Defendants have known about his claims and would not be prejudiced by tolling is incorrect. Defendants have been aware of Plaintiff's state law claims. Prior to the filing of the Georgia lawsuit, however, Plaintiff has never asserted he is pursuing a claim under the ADEA. The court finds these do not come within any of the circumstances described by the Eleventh Circuit as appropriate for equitable tolling. Therefore, the court declines Plaintiff's invitation to equitably toll his EEOC filing on the ADEA. The court finds Plaintiff has failed to exhaust his administrative remedies under the ADEA and that his claim should be dismissed.

### B. Intentional Infliction of Emotional Distress

In Georgia, to succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4)

10

severe emotional distress. *See Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 39-40 (1999). Whether the conduct alleged is egregious enough to sustain a claim of intentional infliction of emotional distress is a question of law. *Id.* Georgia courts have determined that:

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* (citations and quotations omitted).

In *Jarrard v. United Parcel Service, Inc.*, 242 Ga. App. 58, 62 (2000), where an employer gave an employee a harsh performance evaluation on the day the employee returned from extended psychiatric care and continued the evaluation despite the employee's tearful requests for postponement, the court of appeals did not find outrageous conduct, despite the fact that plaintiff alleged malicious motivation of the employer because of the employee's prior complaints about transfers. *Id.* at 148. *See also Miraliakbari v. Pennicooke*, 254 Ga. App. 156 (2002) (no intentional infliction of emotional distress where employer ordered plaintiff to remain at work after plaintiff learned that her son had been injured at school, employer refused to let employee call school to ask about son's injuries, pulled plug on the phone when the employee attempted to call the school, threatened

11

employee that she would be fired if she left work, and ordered employee to stop crying and return to work); *Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260 (1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her false reasons for termination).

Here, the court finds that accepting all of the allegations in Plaintiff's complaint, his claim does not meet the standard set forth in Georgia law for intentional infliction of emotional distress. The majority of Plaintiff's allegations are that he had been an exemplary employee for the company and the company fired him on the pretense of difficult economic times, but for reasons Plaintiff believed had to do with age. These are the expected allegations in an age discrimination claim but come nowhere near the "outrageous" conduct required under Georgia law. Even Plaintiff's contention that his employer "forced him to lie" to his administrative assistant about the real reasons for the closing of the Atlanta office fall far beneath those facts alleged in the cases discussed above where Georgia courts have granted summary judgment in favor of defendant on an intentional infliction of emotional distress claim.

Plaintiff's citations are unavailing. *Ward v. Papa's Pizza To Go, Inc.*, 907 F. Supp. 1535,1539 (S.D. Ga. 1995), simply sets forth the elements of intentional infliction and in the end grants the defendant's motion for summary judgment. *Tuggle v. Wilson*, 248 Ga. 335 (Ga. 1981), discusses tort recovery where the defendant has wilfully and wantonly caused

AO 72A
(Rev.8/82)

emotional upset to plaintiff through use of abusive or obscene language, which does not fit the allegations here.  For these reasons, the court GRANTS Defendants' motion to dismiss Plaintiff's state law intentional infliction of emotional distress claim.

**III.    Conclusion**

The court GRANTS Defendants' motion to dismiss and motion to stay [9] and DENIES AS MOOT Plaintiff's motion for oral argument [11].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 12th day of August 2009.

                                                /s J. Owen Forrester
                                                    J. OWEN FORRESTER
                                 SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)